UNITED STATES of America, Plaintiff–Appellee,

v.

Irma NUNO–PARA, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Jesus GARCIA–REYES, Defendant–Appellant.

Nos. 88–5163, 88–5217.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 7, 1988 *.

Decided June 20, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Frank T. Morell, Moreno & Morell, Chula Vista, Cal., for defendant-appellant, Nuno–Para.

Gary Edwards, San Diego, Cal., for defendant-appellant, Garcia–Reyes.

D. Thomas Ferraro, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before NELSON and BEEZER, Circuit Judges, and REA **, District Judge.

NELSON, Circuit Judge:

Irma Nuno–Para (Nuno) and Jesus Garcia–Reyes (Garcia) petition for rehearing following our previous memorandum disposition in which we vacated their sentences and remanded for resentencing. *See Gubiensio-Ortiz v. Kanahele*, 857 F.2d 1245, 1268 (9th Cir.1988), *overruled, Mistretta v. United States*, — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). In light of *Mistretta*, in which the United States Supreme Court held the Sentencing Reform Act of 1984 and promulgation of the sentencing guidelines by the Sentencing Commission constitutional, we grant

** The Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation.

appellants' petition for rehearing and consider the merits of their appeals.

## FACTUAL BACKGROUND AND PROCEEDINGS

Nuno and Garcia were charged in a six count indictment which alleged a scheme involving the transportation of illegal aliens from San Diego to Los Angeles. Pursuant to a plea bargain, both appellants pleaded guilty to one count of aiding and abetting the transportation of illegal aliens. The government dismissed the remaining charges in the indictment, and the district court ordered the preparation of presentence reports.

The presentence reports state that appellants were central figures in a large-scale alien smuggling ring in which illegal aliens, having crossed the United States–Mexican border, were smuggled north from San Diego to Los Angeles. Immigration and Naturalization Service (INS) agents observed the smuggling ring over a two and one-half month period. During the period of surveillance, agents saw that many groups were regularly conducted from San Diego to Los Angeles. The number of illegal aliens in each group aided by the appellants ranged from two to eighteen.

### A. Presentence Guideline Calculations and Recommendations

#### 1. Nuno

The probation officer concluded that Nuno had a central role in the smuggling organization, and that the rest of the organizers took their direction from her. Evidence showed that appellant Nuno, along with certain of her codefendants, regularly drove the immigrants to Lindbergh Field where they were assisted in boarding an aircraft. She directed the lookouts and guides in receiving the loads of illegal aliens, escorted the aliens into the airline terminal, and purchased tickets for their flights to Los Angeles. She was also observed arriving at and entering into various drop houses.

The sentencing guidelines prescribe a base offense level of six for transporting illegal aliens in violation of 8 U.S.C.

§ 1324(a)(1)(B). *See* United States Sentencing Commission Guideline Manual, § 2L1.1 (1987) [hereinafter Sentencing Guidelines]. Where a defendant commits the crime for profit, as Nuno admittedly did, the base level is increased by three, raising the offense level to nine. *Id.* In addition, the probation officer increased Nuno's offense level by another four levels based on her culpability, i.e., her leadership role in the operation. *See id.* at § 3B1.1(a). Nuno's adjusted offense level was calculated at thirteen. Because, however, she admitted responsibility for the crime, the offense level was reduced by two, for a final offense level of eleven. *See id.* at § 3E1.1(a).

Nuno had no criminal history, so she was classified as a Level I offender. The sentencing table prescribed a guideline sentence of eight to fourteen months incarceration. Accordingly, the probation officer recommended the median term of eleven months plus two years supervised release.

#### 2. Garcia

The probation officer concluded that Garcia engaged in the same activities as Nuno but that his organizational role was lesser. Garcia was regarded as highly culpable, however, because of the items that were found in his residence (one of the drop houses) upon his arrest: a 9mm semiautomatic Uzi, a small bag of marijuana, $7,358 in United States currency, 177,000 pesos, and $2,400 in Western Union money orders payable to Garcia. In spite of these items and his finding that Garcia was central to the operation, the probation officer did not adjust Garcia's offense level upward. The probation officer also did not credit Garcia for acceptance of responsibility because although appellant admitted that he sometimes provided rides to illegal aliens for a small fee, he denied any greater role in the operation. Thus, the probation officer calculated Garcia's offense level to be nine.

The probation officer found that Garcia had five criminal history points which consisted of two points for committing the instant offense while on probation, and one point each for two shoplifting convictions

and carrying a concealed weapon. *See id.* at § 4A1.1. His offender level thus was set at Level III, resulting in a guideline sentence range of eight to fourteen months. The probation report also stated, however, that based on the presence of the weapon, the court might appropriately depart from guideline sentencing. *See id.* at § 5K2.6.[1]

## B. Sentencing

The court rejected the probation officer's recommendations in both cases and departed from the guideline range, sentencing Nuno to four years incarceration and two years supervised release and Garcia to three years incarceration with two years supervised release. In imposing sentence on Nuno, the court stated:

> The sentence here involved is transporting illegal aliens, and that has the model of someone driving an alien, say northward to Los Angeles. You were in the business of moving bodies through the San Diego airport at a rate that I think defies the mind. You were doing it for a substantial period of time.... It was a highly organized, sophisticated operation; and aliens were moved ... on an almost daily basis....
>
> I don't look at this as a casual, giving somebody a ride in the car, or an individual smuggling case; and I don't think the guidelines adequately deal with it. I think that you were the prime mover. I think this was your business, and I think you made a lot of money doing it. I'm going to depart from the guidelines and impose a four-year sentence.... I would find that the aggravating circumstances, *particularly your role in these events, as organizer or as a prime mover, were not adequately taken into consideration by the sentencing commission in formulating the guidelines;* and therefore, I would impose a sentence different from that which has been recom-

mended in the guidelines.... (emphasis added).

Similarly, in sentencing Garcia, the court declared:

> Mr. Garcia, you heard what I said as far as Miss Nuno is concerned. I feel also, your case is a case where there should be a departure from the guidelines.... I would find that the fact that you had a weapon—weapons at the time of your arrest, that you were involved to some extent with possession of narcotics, and *I think your role in this ring was substantial....* I think it was a pattern of activity that moved a substantial number of people through this country, through the port of entry, in a very sophisticated, highly-organized manner; and *you have had previous contact with the criminal justice system;* and, in my judgment, if any one in the world should have known better, you should have, Mr. Garcia. I am going to impose a three-year sentence in your case (emphasis added).

Thus, although the district court referred to the large numbers of aliens transported, it also relied on factors accounted for by offense level adjustments—the profit motive and the defendant's role in the crime. The court also apparently considered, with respect to Garcia, his criminal history, and the seizure of a small bag of marijuana and a semiautomatic firearm at the residence where Garcia was arrested.

## DISCUSSION

### I

### Departure from the Guidelines

Both appellants contend that the district court was unreasonable in departing from the guidelines, and that it relied on impermissible factors to so depart.

The sentencing guidelines are a comprehensive set of rules that are designed to limit the sentencing court's discretion. *See*

---

1. We question the validity of this recommendation. *See infra* at 1414. Section 5K2.6 states:

   If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the guideline range. The extent of the

   increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

Sentencing Guidelines, Chap. 1, Part A, § 3 at 1.2. The purpose for the guidelines is the prevention of disparity in sentencing. *See id.;* S.Rep. No. 98–225, 98th Cong., 1st Sess. at 38–50 (1983), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3221–33. Thus, the guidelines are a tool by which to achieve proportionality in sentencing. *See* S.Rep. No. 98–225, 98th Cong. 1st Sess. at 51–52, U.S.Code Cong. & Admin.News 1984, at 3234–35.

The guidelines seek to fulfill their purpose by setting offense and criminal history levels and providing a table that dictates sentences based on those levels. The guidelines establish a base offense level for most crimes and also provide for upward or downward level adjustments from the base, depending on a number of factors, including the defendant's role in the offense of which he was convicted, *see* Sentencing Guidelines, §§ 3B1.1, 3B1.2, the defendant's motive for committing the offense, *see, e.g., id.* at § 2L1.1(b)(1), and the defendant's acceptance of responsibility and expression of remorse, *see id.* at § 3E1.1.

18 U.S.C. § 3553 establishes the procedure for imposition of a sentence under the guidelines. Section 3553(a) sets forth factors to be considered by the district court in fixing a sentence; these factors include the kinds of sentence and the sentencing range established by the Sentencing Commission, and any pertinent policy statement issued by the Commission. Although subdivision (a) might seem to provide a basis for a wide range of sentencing discretion, subdivision (b) explicitly states:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) [the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2).

Section 3553(b) thus circumscribes the authority of the sentencing court to depart from the sentencing range provided by the guidelines.

The Commission states that it does not expect that courts will often depart from the guidelines and that departure would occur only in the unusual case. Sentencing Guidelines, Chap. 1, Part A § 4(b) at 1.7. However, the Commission identifies three instances in which departure is appropriate: first, where the offense committed falls between two different forms of enhancement; second, where the guidelines provide specific guidance for departure by analogy or by other suggestion; and third, where grounds have not been adequately considered by the Commission. *See id.* at 1.7–1.8. The statements in the introduction make it clear that factors such as an offender's criminal history and his or her role in the offense are already accounted for by application of the guidelines, and reliance on these factors for departure is inappropriate. *See id.* Thus, the district court's discretion to depart from the guidelines is apparently limited both by the language of 18 U.S.C. § 3553(b) and by the Commission's commentary. We reiterate that the decision to depart must be based on the guidelines or policy statements in the guidelines. The district court's discretion is further fettered by any analogy provided by the guidelines, and by the requirement of setting forth specific reasons for departure. *See* Sentencing Guidelines, Chap. 1, Part A § 4(b) at 1.7–1.8; 18 U.S.C. § 3553(c).

■ In sentencing Nuno, the court expressed several reasons in support of its departure from the guidelines. First, the court commented that the smuggling operation was unusual in its size and sophistication, a factor admittedly not considered by

the Commission.[2] Sentencing Guidelines, § 2L1.1, Application Note 8. However, the judge also identified as his reason for departure Nuno's role in the offense and the money made from the offense, factors clearly accounted for by the guidelines. *See id.* at § 2L1.1.

The district court erred in relying on two factors considered and accounted for by the guidelines in its decision to depart from those guidelines. Such a ruling indicates dissatisfaction with the guidelines rather than a reasoned judgment that particular characteristics of the offense or the offenses have not been accounted for. Moreover, because the court's statement of reasons contained an improper as well as a proper basis for departure, we have no way to determine whether any portion of the sentence was based upon consideration of the improper factors. *See United States v. Petitto*, 767 F.2d 607, 609–10 (9th Cir.1985) (where district court fails to determine the accuracy of challenged information in the presentence report or to state that it is not relying on such information, the judgment must be reversed and the case remanded for resentencing); *cf. United States v. Ramirez–De Rosas*, 873 F.2d 1177 (9th Cir. 1989) (departure upheld where court relied on factor identified by Commission as proper ground for departure). Although the judge referred to the number of aliens transported, a reason explicitly identified by the Commission as a proper basis for departure from the guidelines, he did not limit his discussion to that factor. Rather, he expressly relied on Nuno's role in the offense when identifying reasons for departure. Thus, we must hold that the district court's departure was unreasonable

because it improperly relied on factors already considered by the guidelines. Therefore, Nuno's sentence is invalid. *See* 18 U.S.C. § 3553(b).

The court's sentence of Garcia presents similar problems. In its reference to Nuno, the court apparently relied on the substantial number of aliens transported by appellants' operation. Again, however, the court referred to Garcia's role in the offense, a factor accounted for by the guideline offense level. This reference mandates reversal.

■ Also disturbing is the district court's reference to narcotics and weapons found at Garcia's residence. It is not at all clear that the finding of a firearm in Garcia's residence constituted grounds for departure. Section 5K2.6 refers to the use or possession of a weapon "in the commission of the offense," not to mere ownership of a weapon. Here, there are no facts that indicate the weapon was used in the commission of the offenses charged. In the absence of facts that show a relationship between the weapon and the offense, reliance on the finding of a weapon for departure from the guidelines is improper. *Cf. United States v. Otero*, 868 F.2d 1412, 1413–14 (5th Cir.1989).

■ Similarly, the finding of a small bag of marijuana (an infraction in California) is also an inadequate basis on which to depart from the guidelines. The bag of marijuana was quite small and there is no indication of relationship to drug trafficking. Thus, here, the court's reliance on the marijuana as a basis for departure is misplaced.[3]

---

2. "The Commission has not considered offenses involving large numbers of aliens.... An upward departure should be considered in those circumstances." Sentencing Guidelines, § 2L1.1, Application Note 8.

3. Appellant Garcia further asserts that even if the departure was proper, his sentence is unreasonable. Because we reverse his sentence for an improper departure, we need not address this contention. We note, however, that neither section 3553 nor the guidelines express clear guidance for determining when a sentence that departs from the guidelines is unreasonable.

The introduction to the guidelines indicates, however, that even a sentence outside the guidelines must be steered by analogy. *See* Sentencing Guidelines, Chap. 1, Part A at 1.6–1.7. Sentencing courts are further guided by section 3553, which provides factors to be considered in sentencing. These factors include the nature and circumstances of the offense, criminal history of the offender, and the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from further crimes by the defendant. 18 U.S.C. §§ 3553(a)(1) and (2).

## II

### Notice

■ Appellants further assert that the manner in which they were sentenced violated due process because they did not receive adequate notice of the district court's intention to depart from the guidelines. We need not decide whether the sentencing procedure denied appellants due process because we find that the failure to notify appellants of the basis for departure in advance of the imposition of sentence violated Fed.R.Crim.P. 32(a)(1). *Cf. Ramirez-De Rosas*, at 1179 (no denial of due process where court explained reasons for sentence and considered factors set forth in 18 U.S.C. § 3553(a)(2)).

18 U.S.C. § 3552(d) mandates that the defendant receive a copy of his or her presentence report a minimum of ten days in advance of sentencing. Prior to imposition of sentence, the court must permit the government and the defendant to submit materials addressing the accuracy of the presentence report. 18 U.S.C. § 3553(d). Fed.R.Crim.P. 32(a)(1) also requires that the court provide the defendant with notice of the probation officer's determination of "the sentencing classifications and sentencing guideline range believed to be applicable." Rule 32(a)(1) guarantees that the defendant have the opportunity to comment upon these conclusions, as well as any facts contained in the presentence reports.

■ Fed.R.Crim.P. 32(a)(1) and section 3553(d) indicate that the presentence report or the court must inform the defendant of factors that they consider to constitute grounds for departure. *See Otero*, at 1415. This requirement is not satisfied by the fact that the relevant information is present within the presentence report. *See id.* Rather, such information either must be identified as a basis for departure in the presentence report, or, the court must advise the defendant that it is considering departure based on a particular factor and allow defense counsel an opportunity to comment.[4] *See id.*

Here, appellants did not receive notice. Although Garcia's presentence report suggested departure based on his possession of a weapon, it did not identify the possession of marijuana or his criminal history as a ground for departure. And although both reports clearly set forth the size and sophistication of the smuggling operation, neither mentioned this as a possible basis for departure from the guidelines. Moreover, the court did not indicate in any way its intent to depart from the guidelines prior to doing so, and thus failed to permit any meaningful opportunity for comment.

We vacate our previous memorandum disposition and grant appellants' petitions for rehearing. Based on the foregoing discussion, we vacate the appellants' sentences and remand for resentencing in accord with our Opinion.

VACATED AND REMANDED.

---

4. The court remains free to rely on a factor not identified in the presentence report as a ground for departure, but the court must provide some notice of its decision to the defendant.