**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0043n.06

**No. 08-6243**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jan 18, 2011**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
    Plaintiff-Appellee,                  )          ON APPEAL FROM THE
                                         )          UNITED STATES DISTRICT
    v.                                   )          COURT FOR THE EASTERN
                                         )          DISTRICT OF KENTUCKY
ANTHONY LAMONT HUTCHINSON,               )
                                         )
    Defendant-Appellant.                 )
                                         )

BEFORE: SILER, GILMAN, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Anthony Hutchinson pleaded guilty to knowingly and intentionally possessing with the intent to distribute 1.67 grams of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1). He was then sentenced by the district court to serve sixty months in prison. Hutchinson now appeals, arguing that the district court erred in determining his sentence by improperly considering conduct for which he was not indicted. We disagree and affirm.

I.

On October 18, 2007, officers from the Lexington Police Department performed a traffic stop on a vehicle driven by Arry McDaniel Sharp, Jr. Hutchinson was a passenger in the vehicle. As officers approached the vehicle, they observed Sharp making strange movements, such as raising himself out of his seat. The officers subsequently discovered that Sharp was sitting on a large

amount of currency. As a result, Sharp and Hutchinson were removed from the vehicle, and a K-9 unit was requested to conduct a search of the car.[1]

The drug dog alerted on the driver's side door. When officers searched the door, they found a plastic bag containing seven rocks of crack cocaine, weighing approximately twenty grams. Sharp and Hutchinson were both placed under arrest.

During a search of Hutchinson incident to arrest, the officers discovered 1.67 grams of crack cocaine in his front pants pocket. Hutchinson admitted that he possessed the crack cocaine found on his person and intended to distribute it. However, Hutchinson denied any knowledge of the cocaine that officers found in the vehicle.

On October 7, 2008, the district court held a hearing as to Hutchinson at which it heard testimony from witnesses, listened to arguments from both parties, and pronounced Hutchinson's sentence. At that hearing, Sharp testified that he did not know about the crack cocaine that the officers found in the vehicle until the traffic stop was underway. According to Sharp, when the officers stopped him, he looked in the cup holder in the center console of the vehicle for his driver's license but did not see anything in it except for some loose change. However, after Sharp located and showed his driver's license to an officer, he noticed that the cup holder had been closed and that he "could see a baggy sticking out of it." Sharp explained that "the baggy was sticking out because I knew the baggy was not sitting in there when . . . the officer was just at the car."

---

[1]Prior to the search, Sharp and Hutchinson informed the officers that a firearm was located in the vehicle's glove box.

Sharp testified that he then opened the cup holder and saw "drugs in the bag." He "didn't know if it was cocaine or crack . . . but [he] just knew it was drugs." Sharp questioned Hutchinson regarding the contents of the bag. According to Sharp, Hutchinson responded: "Hold on, everything's all right. . . . Just chill, [the officer] is coming right back." As the officer was returning to the vehicle, Sharp took the bag of drugs and placed it "in one of the compartments on the side of the door of the car[.]"

Based on Sharp's testimony, and other evidence in the record, the district court found that the twenty grams of crack cocaine that the officers discovered in the vehicle involved "jointly undertaken activity." Accordingly, for sentencing purposes, the district court held Hutchinson responsible for both the 1.67 grams of crack cocaine found in his pants pocket and the 20 grams of cocaine base located in the driver's side door pursuant to the relevant-conduct provisions of U.S.S.G. § 1B1.3. The Guidelines offense level, taking into account the relevant conduct, was 23, which combined with a criminal history category VI to produce a Guidelines range of 92-115 months' imprisonment. The district court sentenced Hutchinson to sixty months' imprisonment.

Hutchinson timely appealed.

## II.

Hutchinson argues that, in calculating his offense level, the district court improperly ascribed to him the twenty grams of crack cocaine found in the vehicle.[2] He claims that the district court

---

[2]Hutchinson argues that the district court's attribution of the twenty grams of crack cocaine to him as relevant conduct constitutes an upward departure. In so doing, Hutchinson ignores that "[t]he guidelines are clear that conduct other than that for which the defendant has been convicted

should have considered only the 1.67 grams of crack cocaine found in his pocket to which he pled guilty.

We review the district court's interpretation of the Sentencing Guidelines de novo, while findings of fact made during sentencing are reviewed for clear error. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002). Thus, we review a district court's "finding that the criminal acts of others in a jointly undertaken criminal activity are reasonably foreseeable and in furtherance of the jointly undertaken criminal activity" for clear error. *United States v. Tocco*, 306 F.3d 279, 284 (6th Cir. 2002). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. (citation and internal quotation marks omitted).

The United States Sentencing Guidelines provide that relevant conduct, which is used to determine the applicable Guidelines range, includes

> in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

may be considered by the court in determining the appropriate sentencing range." *United States v. McDowell*, 902 F.2d 451, 453 (6th Cir. 1990) (citing U.S.S.G. § 1B1.3). Indeed, in *McDowell*, we determined that the district court erred when it considered, as grounds for an upward departure, "the fact that the defendant operated a crack house within 1,000 feet of two schools[.]" *Id*. at 452. We held that "this fact . . . should have been taken into consideration as 'relevant conduct' in the calculation of the base offense level rather than in making an upward departure." *Id.* As in *McDowell*, the present case does not involve an upward departure. In fact, contrary to Hutchinson's assertions, the district court imposed a sentence below the advisory Guidelines range.

U.S.S.G. § 1B1.3(a)(1)(B). For a defendant to be held accountable for the conduct of others through jointly undertaken criminal activity, "(1) the conduct must be in furtherance of the jointly undertaken criminal activity; and (2) the conduct must be reasonably foreseeable in connection with that criminal activity." *United States v. Campbell*, 279 F.3d 392, 399 (6th Cir. 2002) (citing U.S.S.G. § 1B1.3, cmt. n.2). Application Note 2 of U.S.S.G. § 1B1.3, which provides this test, also states that:

> In order to determine the defendant's accountability for the conduct of others under [U.S.S.G. § 1B1.3(a)(1)(B)], the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).

U.S.S.G. § 1B1.3, cmt. n.2.

In *Campbell*, this court, following the Second Circuit's interpretation of § 1B1.3(a)(1)(B) in *United States v. Studley*, 47 F.3d 569 (2d Cir. 1995), held that § 1B1.3(a)(1)(B) "requires that the district court make *particularized* findings with respect to both the scope of the defendant's agreement *and* the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy." 279 F.3d at 400. The *Campbell* court noted that the first prong of the *Studley* test

> serves to differentiate between co-conspirators' varying degrees of culpability. In order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others.

*Id.* (citations and internal quotation marks omitted).

At Hutchinson's sentencing hearing, the district court provided the following explanation for

holding Hutchinson accountable for jointly undertaken criminal activity:

> We have two gentlemen who one has – clearly has crack cocaine on his possession and admittedly was possessing this crack cocaine found in his pocket, no doubt found in his pocket.
>
> The other one says, "I handled that crack cocaine, but I didn't know it was in the car until I saw it sitting in this console glove container or drink container and console, cup holder type of deal after I had looked in there and not seen it."
>
> That presupposes that while he was looking for his license, if I follow what he is saying, is that, "Hutchinson must have taken that and put it in there because I didn't put it in there. I didn't see it when it was there before."
>
> The only person that could have done that is Hutchinson, which is I think basically the thought process.
>
> Well, if you look at the little bags, whether they are – the rocks are exactly the same is one thing, but the packaging is similar.
>
> And I have an alternative theory, is that these – these other bags belong – were in Mr. Hutchinson's pocket when he put the ones in the container – console, he forgot one and left it in his pocket.
>
> I mean, it just got left behind, they are small, they are not [sic] hard to see.
>
> Now, it doesn't really make much difference because I think both of the gentlemen were involved in the distribution of crack cocaine.
>
> The guideline, as the probation officer points out in the addendum, one point – 1(b)(1).3 – 1(b)(1).3 says that they were in the same kind of conduct, they were doing this.
>
> I don't think it needs to be – it needs to be shown that they were acting in concert or in a conspiracy, nor does it have to be charged that they were operating a conspiracy.
>
> Yeah, it was 1(b)(1).3(A)(1)(b), and I think this was a jointly undertaken activity.

So whether it was Hutchinson's crack or whether it was Sharp's crack, but they were all going to be dealing in crack.

And when they saw the police, it was pretty much a mutual thing.

You didn't hear Hutchinson say, "Well, I don't want to go there, I want to go this way."

So I think the idea that Hutchinson should be charged with this is correct, and that's what I'll do.

Here, consistent with the requirements set forth in *Campbell,* the district court made particularized findings with respect to both the scope of Hutchinson's agreement and the foreseeability of the twenty grams of crack to Hutchinson. After hearing Sharp's testimony, viewing the crack cocaine, and the bags that contained the drugs, the district court opined that "these other bags . . . were in Mr. Hutchinson's pocket when he put the ones in the container – console, he forgot one and left it in his pocket." The district court noted that the packaging of the bags of crack contained in the larger bag, which was recovered by the police from the driver's side door, was "similar" to the bag of crack found on Hutchinson. Thus, the district court concluded: "I think both of the gentlemen were involved in the distribution of crack cocaine. . . . So whether it was Hutchinson's crack or whether it was Sharp's crack . . . they were all going to be dealing in crack." *See Campbell*, 279 F.3d at 399 ("In order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." (citation and internal quotation marks omitted)). Based on the facts and evidence in the record, the district court's finding as to Hutchinson's participation in jointly undertaken activity was not clearly erroneous.

III.

For these reasons, we affirm the judgment of the district court.