UNITED STATES of America,
Plaintiff–Appellee,

v.

Bonnie Sue ANDERS,
Defendant–Appellant
(89–5465)

and

Trumanda Weddle,
Defendant–Appellant
(89–5467).

Nos. 89–5465, 89–5467.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1989.

Decided April 4, 1990.

Louis DeFalaise, U.S. Atty., Jane E. Graham, Asst. U.S. Atty. (argued), Lexington, Ky., for U.S.

Lee Fugate (argued), Clearwater, Fla., for Bonnie Sue Anders.

Edward H. Adair (argued), Williamsburg, Ky., for Trudie Weddle.

Before KEITH and NORRIS, Circuit Judges, and PECK, Senior Circuit Judge.

KEITH, Circuit Judge.

Defendant Bonnie Sue Anders ("Anders") appeals from the district court's judgment and commitment order charging her with possesion with intent to distribute a controlled substance and tax evasion. Both Anders and her daughter, defendant Trumanda (Trudie) Weddle ("Weddle") appeal from the district court's judgment and commitment order finding them guilty of intentionally using a telephone in facilitating the commission of a felony. For the reasons stated below, we AFFIRM the district court's judgments against Anders and Weddle.

## I. FACTUAL BACKGROUND AND PROCEEDINGS

Jerry Allen LeQuire ("LeQuire") headed a drug smuggling organization which transported over eighty plane loads of cocaine from Colombia into the United States during 1982 and 1983.[1] In January 1983, Anders was recruited into the organization to conduct electronic counter surveillance for LeQuire.[2] Anders also assisted in transporting and laundering currency. On

---

1. Federal authorities estimate over $280 million in cash was generated by the LeQuire organization from its illegal importation and distribution of cocaine and marijuana.

2. Anders conducted illegal telephone wiretaps in order to uncover disloyal members of the drug smuggling organization and gather information for LeQuire. She acquired her electronic sur-

December 15, 1988, Anders was convicted, in the Middle District of Alabama, of racketeering to distribute controlled substances, in violation of 18 U.S.C. § 1961(5). This conviction was predicated on Anders' activities in the LeQuire drug smuggling operation.

In early 1986, after LeQuire's arrest and conviction, Anders entered into a cocaine distribution association with LeQuire's former wife, Karla Espinal ("Espinal"). This cocaine distribution association remained active through May 1987.[3] Espinal was arrested on August 12, 1987,[4] at which time she cooperated with the government and provided information on Anders' role in the LeQuire drug smuggling organization, as well as other drug trafficking activities involving Anders between 1986 and 1987.

Espinal revealed that Anders and Hildreath Tester ("Tester"), a co-conspirator charged in the indictment at issue, had been distributing approximately a kilogram of cocaine every two months. Espinal learned from Anders that Willie C. "Dog" Henry, another defendant in this indictment, was the operation's principal distributor. Espinal informed the government that she had purchased cocaine from Anders and Tester.

Given the information provided by Espinal and independently developed by law enforcement authorities, the government obtained a wire interception order for electronic surveillance of Anders' home telephone in Corbin, Kentucky. The wire interception coupled with physical surveillance established that Anders and Tester were regularly distributing cocaine and marijuana through Willie C. "Dog" Henry, Lana Dale Barton (Anders' sister) and Trumanda Weddle—the other defendants listed in the indictment. Weddle participated in the conspiracy by transmitting communications among the co-conspirators.

On March 12, 1988, FBI agents conducted a surreptitious entry and search of storage unit 415 at the Foothills Storage Center in Maryville, Tennessee. Prior surveillance of the storage unit had established that the conspirators were using it to house cocaine. Upon conducting the search, the agents found triple beam scales, other scales suitable for weighing marijuana, ziplock plastic bags, and 981 grams of 91% pure cocaine.

On April 6, 1988, Anders, Weddle and their co-defendants were charged in a nine count indictment. Both Weddle and Anders were charged in the first two counts with possession with intent to distribute 981 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute 981 grams of cocaine, in violation of 21 U.S.C. § 846. Anders was charged in Counts 4, 5, and 6 with using a telephone to facilitate a drug felony, in violation of 21 U.S.C. § 843(b) as well as Counts 8 and 9 charging her with additional cocaine distributions, in violation of 21 U.S.C. § 841(a)(1). Weddle was charged in Counts 6 and 7 with using a telephone to facilitate a drug felony, in violation of 21 U.S.C. § 843(b).

On January 20, 1989, Anders and Weddle entered guilty pleas pursuant to their respective agreements. Anders pled guilty to a superceding information charging her with conspiracy to distribute 981 grams of cocaine and one count of tax evasion. Weddle pled guilty to Count 6 of the indictment charging her with the use of a telephone to facilitate a cocaine transaction.

The plea agreements for both Anders and Weddle set forth the maximum penalty for the charges to which they pled. Each

veillance skills through her employment as a cable repairwoman with South Central Bell Telephone Company of Corbin, Kentucky. In 1980, the company fired Anders following her arrest and conviction for cocaine trafficking in Whitley County, Kentucky.

3. In April 1986, Espinal temporarily discontinued contact with Anders. Sometime during this period, Anders teamed up with Hildreath Tester ("Tester") to distribute cocaine. In early 1987, after settling their differences, Anders and Espinal resumed their cocaine association.

4. Espinal was arrested in connection with a cocaine transaction with Hector Ramirez ("Ramirez"), a former LeQuire associate. She was charged with possession with intent to distribute seven kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). Espinal entered a guilty plea under an agreement with the government and was the key witness against Ramirez at his trial. *See United States v. Ramirez,* 871 F.2d 582 (6th Cir.1989).

plea agreement required that the defendant admit to all facts alleged in the charge to which the plea was being entered. The plea agreements specifically provided that there was *no agreement* between the parties as to the appropriate sentence. By signing the plea agreements, both Anders and Weddle indicated that they understood that the government would apprise the court of the total offense behavior, including the total amount of controlled substance involved. Both pleas were accepted subject to the presentence reports which were made available for disclosure on March 2, 1989. Anders and Weddle raised objections to the presentence reports.

### A. Presentence Guideline Calculations and Recommendations

#### 1. *Anders*

The probation officer concluded that Anders maintained a sophisticated leadership role in her drug organization and that she had several connections for distributing drugs in Southeast and Central Kentucky. She frequently cautioned others in the organization not to reveal much over the phone, and insulated herself from being linked to the storage location. Evidence showed that Anders and Tester were partners who shared equally in the cost and profits from their sale of drugs.

An offense involving 981 grams of cocaine, in violation of 21 U.S.C. § 846, qualifies for a base offense level of 26.[5] *See* The United States Sentencing Commission Guidelines Manual (hereinafter "Guidelines") §§ 3D1.4, 2D1.1(a)(3) (1989). Where a defendant, through the offense behavior, could be described as an *organizer, leader, manager or supervisor,* the base level is increased by two levels. *Id.* at § 3B1.1(c). Anders' adjusted offense level was calculated at 28. Since Anders admitted responsibility for the crime, the offense level was reduced by two, for a final offense level of 26. *See id.* at § 3E1.1(a).

Although Anders has an extensive criminal history, all of her convictions were not included in the calculation as she was without representation in some cases. After tabulating the convictions, Anders was classified as a Level I offender. The sentencing table prescribed a guideline sentence of 63 to 78 months. In the presentence report, the probation officer listed factors that may warrant a departure from the Guidelines. The probation officer did not recommend departure from the Guidelines, but indicated that "[t]here are extensive aggravating factors regarding the overall offense behavior of defendant Anders." Sentencing Recommendation at 1. The probation officer recommended the maximum Guideline term of 78 months on Count one, 48 months to run consecutively on Count two, and five years supervised release.

#### 2. *Weddle*

The probation officer determined that Weddle was well acquainted with her mother's activities and was quite capable of advising others, in her mother's absence, of Anders' whereabouts and intentions. Frequently, Weddle received or relayed messages from one conspirator to another in a manner evincing her overall understanding of the conspiracy. The Guidelines prescribe a base offense level of 12 for the use of a communication facility in committing a drug offense, in violation of 21 U.S.C. § 843(b). *See* Guidelines, § 2D1.6. The probation officer did not adjust Weddle's guideline range for her role in the offense. Weddle admitted her responsibility in the crime; therefore the offense level was reduced by two for a final offense level of 10. *See id.* § 3E1.1(a).

Weddle had several federal criminal convictions and numerous state convictions. Since the state court convictions are not calculated in the Guidelines, Weddle was classified as a Level II offender. The sentencing table prescribed a sentence of 8 to 14 months incarceration. The probation officer, however, found considerable aggravating circumstances warranting departure; therefore, she recommended a term of 46 months incarceration and one year supervised release.

### B. Sentencing

At the sentencing hearing, held on March 31, 1989, Anders' counsel was concerned

---

5. Count 2, tax evasion, is a non-guideline matter.

about the presentence report as it disclosed factors that might warrant an upward departure from the Guideline range.[6] Anders' counsel maintained that the plea agreement was conditioned upon his client receiving a sentence within the Guidelines. He argued that the court should specifically state whether it was going to depart from the Guidelines based upon the information in the presentence report. Counsel for Anders contended that if the court expressed an intent to depart from the Guidelines, then he would move for either appointment of new counsel, a resentencing hearing, or a motion to withdraw Anders' plea. The district court was puzzled by counsel's argument: "I don't see anything in the plea agreement about departures or what the sentence will be, other than the maximum sentence, is there? I mean have I missed something in there?" Joint Appendix, Volume II at 22.[7] The court reminded counsel that at the arraignment, Anders was advised that the court had the power to depart from the Guidelines. Anders further argued that the information received from Espinal and Tester should not be considered by the court.[8] The court stated it would not make a premature announcement of its final sentence and that nothing precluded its reliance upon the information provided by either Espinal or Tester.

Weddle's counsel, on the other hand, argued that his client believed the drug being distributed was marijuana not cocaine;

therefore her Guideline score should be reduced to reflect her minimal role in the offense. The government argued that the court should overrule the objection based on two important factors: (1) the plea agreement itself required Weddle to admit to *all* facts alleged in the count to which she was pleading—the count alleged that the drug transaction related to the distribution of *cocaine*—thus she was bound by both her plea agreement and guilty plea; and (2) the intercepted telephone conversations to which Weddle was a party discussed cocaine and raised a reasonable inference of Weddle's knowledge.[9] The court overruled Weddle's objection, finding that even if Weddle was not aware of all the details of the conspiracy she, nevertheless, was subjected to the conspiracy. The court also overruled Weddle's objection concerning her alleged minimal role in the conspiracy finding that under the Guidelines, she should not receive an adjustment for her role in the offense.

The district court departed from the Guidelines in sentencing both Anders and Weddle. It determined that the Guidelines did not reflect adequately the total offense conduct or criminal history of either Anders or Weddle. In imposing sentence on Anders, the court stated:

> I think the guideline range for Miss Anders is as stated on Count 1 of sixty-three to seventy-eight months. *However, I think it calls for a departure in this case.* And I will place my reasons in

6. Federal Rule of Criminal Procedure 32(c)(2)(B) requires the probation officer to provide an explanation of "any factor that may indicate that a sentence of a different kind or ... length from the one within the applicable guideline would be more appropriate under all the circumstances." The probation officer met the requirements of Rule 32(c)(2)(B).

7. The court further inquired:

> I'm not sure I understand whether you are trying to withdraw your plea or whether you want more time to meet the test and bring in more proof or whether you want to go ahead today. I am not—I have not made a final decision in this yet.... Otherwise, if I made a final decision, there is no reason to have to call upon you, and I will just render my sentence. I don't proceed that way, and I don't think we are supposed to.

Joint Appendix, Volume II at 23.

8. The presentence report reflected that in addition to the 981 grams of cocaine, evidence established that during the past two years, Anders and Tester had distributed between nine and twelve kilograms of cocaine and 122 pounds of marijuana. Tester and Espinal supplied this information to the government.

9. The government cited conversations between Weddle and Gladys Creel ("Creel") wherein cocaine was discussed in the context of Creel wanting to see Anders for the purpose of conducting business. Moreover, the telephone count to which Weddle pled guilty, involved an interchange between her and her mother concerning the distribution of the 981 grams of cocaine which was the subject of their prosecution.

writing. But there are two or three factors that I think will be listed there. There may be some others. *But primarily, I think it has to do with two factors. One is the fact that there is a much larger quantity of controlled substances here, as stated by Karla Espinal.* And I think that she is a reliable person, because she had been found to be reliable in at least three trials that the Court knows about. There may be more than that. *And second, this had been corroborated by the statement from Mr. Tester.* I know there is an objection to that, but I think that just further corroborates that. *Also, the Court, although it's not, it's not a factor in setting up the guidelines, the conviction in Alabama, I think, can be considered here.*

Joint Appendix, Volume II at 79 (emphasis added). Likewise, in sentencing Weddle, the court determined:

> In the case of the defendant Trudie Weddle, I don't think that we should change any criteria here, although I know that Mr. Adair has raised that issue. That is, the guidelines call for eight to fourteen months. *However, the Court feels that this calls for an upward departure in her case .... It has to do with the fact that there is a large quantity of drugs involved in the case, and also she does have another criminal conviction for which she has never been finally convicted, but she does have that on her record.* I don't know what she'll get for that. According to this, she'll get a concurrent sentence.... And I will further amplify on the reasons for departure in writing in this particular case.

*Id.* at 80 (emphasis added). Anders was sentenced to 120 months on the drug conspiracy count, a consecutive sentence of 48 months on the tax evasion count, five years supervised release and a $100 special assessment fee. Weddle was sentenced to 48 months and one year of supervised release.

On April 10, 1989, Anders and Weddle filed timely appeals with this court. On appeal, Anders argues that her sentence should be vacated because the district court did not provide her with advance notice of its intention to depart from the Guidelines and therefore, violated her due process rights. Weddle argues that the district court erred in denying a reduction in her sentence for her alleged minimal role in the conspiracy.

## II. DISCUSSION OF ANDERS' CLAIMS

### A. Right to Notice of the Upward Departure from the Sentencing Guidelines

▋ The Sentencing Guidelines were designed to prevent disparity in sentencing and to limit the sentencing court's discretion. *See* Guidelines, Chap. 1, Part A. § 3 at 1.2; S.Rep. No. 98–225 98th Cong., 1st Sess. at 38–50 (1983). The Guidelines establish offense levels and supply a table which plots sentences based upon those levels. It provides a base offense level for most crimes and allows for upward or downward adjustments depending on a variety of factors.

In the present case, Anders argues that the manner in which she was sentenced violated her due process rights because the district court failed to advise her of its intent to depart from the Guidelines. Given the fact that the presentence report sets forth the factors warranting an upward departure, we find Anders' argument disingenuous. We are persuaded by the Ninth Circuit's decision in *United States v. Nuno–Para,* 877 F.2d 1409 (9th Cir.1989) which discussed the standard for determining whether the notice requirement is met. We find that that standard has been met here.

It is undisputed that convicted defendants, including those who plead guilty, have a due process right to a fair sentencing procedure. *See United States v. Rone,* 743 F.2d 1169 (7th Cir.1984). 18 U.S.C. § 3552 requires that the defendant receive a copy of his or her presentence report at least ten days before sentencing. Prior to the actual imposition of the sentence, the court must permit the government and the defendant to submit materials addressing the accuracy of the presentence report. 18

U.S.C. § 3553(d). Federal Rule of Criminal Procedure 32(a)(1) provide in pertinent part:

> ... Prior to the sentencing hearing, the court shall provide the counsel for the defendant and the attorney for the Government with notice of the probation officer's determination ... of the sentencing classifications and sentencing guideline range believed to be applicable to the case. At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.

Therefore, Rule 32(a)(1) guarantees that the defendant has the opportunity to comment on the probation officer's conclusions, as well as any facts contained in the presentence report.

In *United States v. Nuno–Para*, 877 F.2d 1409 (9th Cir.1989), two defendants were charged in a six count indictment that alleged a scheme involving the transportation of illegal aliens from San Diego to Los Angeles. Pursuant to a plea agreement, both defendants pled guilty to one count of aiding and abetting in the transportation of illegal aliens. In sentencing both defendants, the district court rejected the recommendations of the probation office and departed from the guideline range. *Id.* at 1412. Defendants argued that the manner in which they were sentenced violated their due process rights, because they did not receive adequate notice of the district court's intention to depart from the Guidelines. On this issue, the Ninth Circuit held: "[w]e need *not* decide whether the sentencing procedure denied [defendants] due process because we find that the failure to

notify [defendants] of the basis for departure in advance of the imposition of sentence violated Fed.R.Crim.P. 32(a)(1)." *Id.* at 1415 (emphasis added). Therefore, the court never reached the due process issue because it found Rule 32(a)(1) had been violated. Although the presentence report suggested departure based on one factor included in the report, it failed to identify *all* of the factors that the court relied upon in its departure.[10]

The presentence report or the court must inform the defendant of factors that may constitute grounds for departure from the Guidelines. *See Nuno–Para*, 877 F.2d 1409, 1415 (9th Cir.1989); *United States v. Otero*, 868 F.2d 1412, 1415 (5th Cir.1989); Fed.R.Crim.Proc. 32(a)(1); 18 U.S.C. § 3553(d). This requirement is not satisfied, however, by merely including the relevant information in the presentence report. *See Nuno–Para*, 877 F.2d at 1415; *Otero*, 868 F.2d at 1415. Instead, "such information *either* must be identified as a basis for departure in the presentence report, *or*, the court must advise the defendant that it is considering departure based on a particular factor and allow defense counsel an opportunity to comment." *Nuno–Para*, 877 F.2d at 1415 (emphasis added). *See also Otero*, 868 F.2d at 1415. Therefore, the notice requirement could be met in one of two ways. If the presentence report provided the defendant with sufficient notice, then the court was not bound to specifically inform the defendant of its decision to depart from the Guidelines. *See Nuno–Para*, 877 F.2d at 1415.[11]

Anders was given sufficient notice because the presentence report specifically addressed factors that may warrant depar-

10. In *Nuno–Para*, the presentence report suggested departure based on the defendant's possession of a weapon; it failed to identify the defendant's possession of marijuana or defendant's criminal history as a ground for departure. *Id.* at 1415.

11. In the recent case of *United States v. Mendoza*, 890 F.2d 176 (9th Cir.1989), the district court sentenced the defendant to 18 months imprisonment which was an upward departure from his guideline range of 1 to 7 months. The Ninth Circuit held that the defendant had to be resen-

tenced as he was not given notice of the proposed departure or provided with an opportunity to respond prior to the imposition of the increased sentence. *See* 890 F.2d at 179–80. The court in *Mendoza* relied on *United States v. Nuno–Para*, 877 F.2d 1409 (9th Cir.1989), for the proposition that if the sentencing court is considering an upward departure, the court must advise the defendant and his counsel of the proposed upward departure prior to the actual imposition of the sentence. In our view, however, *Nuno–Para* stands for more than this.

ture from the Guidelines.[12] Anders was free to dispute those factors identified in the presentence report from March 2, 1989, the date the presentence report was available for disclosure, until the date the sentence was imposed. She did not. The facts in the present case are distinguishable from those presented in *United States v. Mendoza*, 890 F.2d 176 (9th Cir.1989), where absolutely no indication of an upward departure was given, and the facts in *Nuno–Para* where the basis for the departure was not provided.[13]

Instead of addressing the factors in her presentence report, Anders opted to elicit her sentence from the court. The Guidelines do not provide, nor do we hold, that a sentencing court must state its final sentencing decision *before* hearing counsels' arguments on disputed factors in the presentence report. The district court not only listened to Anders' objections to the presentence report, but also gave specific reasons for its upward departure. Furthermore, the district court relied only on information specifically designated in the presentence report as warranting departure.

Counsel for Anders contends that his client accepted the plea agreement because at all times, she anticipated a sentence within the Guideline range. The plea agreement, however, placed no restrictions on the sentence that the district court could impose. The plea agreements for both Anders and Weddle did not state the sentences that should be imposed, or that the defendants would be sentenced within the Guidelines. Anders and her counsel knew that the plea agreements were subject to the presentence report. Indeed, by signing the plea agreement, Anders signified that she understood that the court would be apprised of her *total* offense behavior and that her sentence would be based on a variety of factors.

The district court provided Anders with sufficient notice of its departure, through the information identified in the presentence report.[14] The district court reserved its judgment until it had heard counsels' arguments. It not only indicated that it was departing from the Guidelines, based upon the factors contained in the presentence report, but also provided several reasons for its departure. The district court correctly performed its duties pursuant to the Guidelines and accorded Anders her due process rights.

### B. Upward Departure Justifications

█ In sentencing Anders, the district court upwardly departed from the Guidelines as it determined that the Guidelines did not reflect adequately either Anders' total offense conduct or her criminal history. Because the district court concluded

---

12. Under Part F of the presentence report, entitled Factors That May Warrant Departure, the probation officer provided a list of factors that might warrant an upward departure. The more notable factors include: Anders' December 1988 conviction in Alabama of conspiracy racketeering to distribute controlled substances (Anders' sentencing was still pending at the time of this appeal); and the investigation of the instant offense which revealed that it is actually part of an ongoing plan, beginning in 1986 and continuing until Anders' arrest, in which approximately one kilogram of cocaine was distributed every two months.

13. The present case is also substantially different from cases in other circuits that have addressed this issue. *See United States v. Palta*, 880 F.2d 636, 640 (2nd Cir.1989) (district court made no findings of fact to resolve factual disputes and its upward departure from the Guidelines denied defendant adequate notice and an opportunity to be heard); *United States v. Cer-*

*vantes*, 878 F.2d 50, 56 (2nd Cir.1989) (district court's statement of its intention to sentence defendant within the Guidelines followed by its subsequent upward departure did not afford defense counsel proper notice and opportunity to be heard); *United States v. Otero*, 868 F.2d 1412, 1415 (5th Cir.1989) ("[N]either probation officer's report nor any other action by the court put Otero on notice that the cocaine might be considered of unusually high purity or ... that the court might adjust the sentence imposed.").

14. Given the information provided in the presentence report, Anders' counsel could have moved for a continuance or withdrawn Anders' plea if he feared the court would make an upward departure from the Guidelines. The district court suggested as much when it inquired whether counsel was withdrawing Anders' plea. *See* Joint Appendix, Volume II at 22–23.

that the information provided by Espinal and Tester was reliable, it found that between 1986 and March 1988, Anders had distributed approximately twelve kilograms of cocaine and 122 pounds of marijuana. Anders raises two arguments on this point; first, that the district court improperly relied on the information provided by Espinal and Tester; and second, that the court was restricted to consider only that amount of cocaine which was possessed during the period of the charged conspiracy—January to March 1988. We find both arguments to be without merit.

A district court is permitted to depart from a Guidelines-specified sentence only when it finds "an aggravating or mitigating circumstance ... that was not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b). Although the Sentencing Commission does not expect sentencing courts to depart from the Guidelines often, it identifies three instances where departure is appropriate: (1) where the offense committed falls between two different forms of enhancement; (2) where the Guidelines provide specific guidance for departure by analogy or by other suggestion; and (3) where the grounds for departure have not been mentioned or considered adequately by the Commission. *See* Guidelines, Chap. 1, Part A § 4(b) at 1.7–1.8. The Guidelines further require that the sentencing court provide specific reasons for its upward or downward departure. *See id.;* 18 U.S.C. § 3553(c).

In *United States v. Joan,* 883 F.2d 491 (6th Cir.1989), we adopted the First Circuit's three-step analysis for reviewing sentences that depart from the Guidelines:

The first step is a question of law regarding whether the circumstances of the case are sufficiently unusual to justify departure. Step two involves a determination as to whether there is an actual factual basis justifying the departure. Here, the standard is whether the determination made involves clear error.

*Id.* at 494. *See United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Applying this analysis to the facts in this case, the upward departure was justified.

The Guidelines provide:

If *reliable information* indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

Guidelines, § 4A1.3 at 4.8–4.9 (emphasis added). Here, the district court relied upon the information provided by Espinal and Tester, and found that Anders had distributed between nine and twelve kilograms of cocaine and 122 pounds of marijuana between 1986 and March 1988. The court determined that the additional amount of cocaine was relevant conduct for sentencing purposes under the Guidelines. *See Guidelines,* § 1B1.4.

Counsel for Anders argued that Espinal's testimony is not reliable and had several inconsistencies. Joint Appendix, Volume II at 15. The court found Espinal's testimony reliable. Espinal not only testified in three other drug cases, including Anders' conviction in Alabama,[15] but also *all* of the information she provided to the government has been confirmed independently.[16] Moreover, Anders failed to dis-

---

**15.** In the court's post-sentencing memorandum fully explaining its reasons for the departure, it stated:

The defendant has asserted that it is unfair to consider the statement of Karla Espinal, as she was an unreliable person, but the Court notes that Espinal was a witness against Anders in Alabama and was also a witness in two other drug cases in this district, resulting in convictions in each case. Therefore, the Court finds that she is a reliable witness. Joint Appendix, Volume I at 114.

**16.** At the sentencing hearing, the government stated:

I would suggest to the Court that everything that Karla Espinal has told the United States with respect to this particular conspiracy has been confirmed right down the line.... Miss Espinal told us that Miss Anders was involved in transactions, a cocaine conspiracy essentially with Hildreath Tester, with Lana Dale Barton, with Willie C. Henry, and with her own daughter being somewhat involved. Ev-

pute the accuracy of a single factual allegation pertaining to Espinal's testimony. Given the preponderance of the evidence supporting the truthfulness of Espinal's information, we are persuaded that Espinal is a reliable witness and therefore, the information that she provided to the government can be relied upon for the upward departure.

Anders contends that because co-defendant Tester pled guilty after she entered into a plea agreement, the district court was foreclosed from using any of Tester's statements against her. Although Anders' *own* testimony, concerning the amount of cocaine transacted, could not be used against her,[17] the government was free to use any independent evidence of the same transaction. Therefore, Tester's statements concerning the amount of cocaine that was involved were not immune from use against Anders. Furthermore, the probation office was in possession of Espinal's information concerning the amount of cocaine Anders and Tester distributed, prior to this prosecution. Espinal's information *alone* was sufficient to implicate Anders.

In making an upward departure, the district court is free to consider conduct similar to that charged in the indictment. *See United States v. DeLuna–Trujillo,* 868 F.2d 122, 124 (5th Cir.1989). Since the information provided by Espinal and Tester was similar and related to the offense charged in the indictment, the district court

properly considered it in making an upward departure.[18]

We believe that Anders' criminal history, the overall amount of drugs involved, and the corroborated information on her drug trafficking activities is sufficiently unusual to justify the district court's upward departure from the Guidelines in this case. Moreover, since due deference is given to the district court's action in departing from the Guidelines,[19] we find that the district court was justified in its upward departure from the Guidelines as it had sufficient, reliable information upon which to base its determination.

## III. DISCUSSION OF WEDDLE'S CLAIMS

### A. Right to Sentence Adjustment for Minimal Participation in the Drug Conspiracy

■ Weddle maintains that she was a minimal participant in the drug conspiracy. She contends that her offense behavior failed to indicate her knowledge or understanding of the scope and structure of the enterprise or of the activities of the other co-defendants; therefore a sentence adjustment should have been made. The probation officer determined that in the application notes to §§ 2X3.1, 2X4.1, the Sentencing Commission indicated its intent that an adjustment for a mitigating role not be applied in a plea to a lesser role because an adjustment for reduced culpability is incor-

---

ery bit of that has been consistently corroborated by the subsequent investigation, by the *Title II wiretap information,* and by the surveillance conducted by the law enforcement authorities. I suggest that Karla Espinal's track record with respect to reliability has been virtually unimpeached....

I would suggest to the Court that just relying on Karla Espinal's information alone, without considering any other information, the Court would be entitled to rely upon that information as to the amounts of cocaine that Bonnie Sue Anders told Karla Espinal she and Tester were trafficking in over that period of time, is sufficiently reliable for this Court. Joint Appendix, Volume II at 28–29.

17. *See* Joint Appendix, Volume II at 27.

18. Anders argues that the district court should have rejected her plea agreement if it felt that the agreement did not reflect the seriousness of

her offense behavior. We are not persuaded by this argument. The district court was able to consider relevant offense behavior. Section 1B1.4 of the Guidelines provides that in determining the sentence to be imposed either within or without the Guidelines, the court may consider "without limitation, any information concerning the background character and conduct of the defendant, unless otherwise prohibited by law." *See United States v. Taplette,* 872 F.2d 101 (5th Cir.), *cert. denied.* —— U.S. ——, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989); *United States v. DeLuna–Trujillo,* 868 F.2d 122 (5th Cir.1989).

19. *See United States v. Joan,* 883 F.2d 491, 495–96 (6th Cir.1989); *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

porated in the base offense level. Weddle argues that the arbitrary application of the commentary following §§ 2X3.1 and 2X4.1 to her guideline range under § 2D1.6 is improper and constitutes error. Even though we find that it was improper for the probation officer to apply the application notes to §§ 2X3.1, 2X4.1 to § 2D1.6, we reject Weddle's argument and hold that she was not entitled to a reduction in sentence as she was not a minimal participant in the offense.

Section 1B1.7 of the Guidelines, provides: The Commentary that accompanies the guidelines sections may serve a number of purposes. First, *it may interpret the guideline or explain how it is to be applied.* Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. *See* 18 U.S.C. § 3742. Second, the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines. Such commentary may provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline.

Guidelines, § 1B1.7 (emphasis added).

The commentary for one guideline is not transferrable to another. The commentary following §§ 2X3.1 and 2X4.1 reflects the Sentencing Commission's policy and intent behind *only* those individual guidelines. Certainly, if the Sentencing Commission desired the commentary of §§ 2X3.1 and 2X4.1 to be applied to any other guideline then it would have done so.

The sentencing court accepted the probation officer's rationale for applying the commentary to §§ 2X3.1 and 2X4.1 to § 2D1.6. Although the sentencing court improperly relied upon the commentary as a basis for prohibiting an adjustment in Weddle's offense role, Weddle is still not entitled to an adjustment. The evidence presented indicates that Weddle is not a minimal participant in this offense.

We are bound to uphold a sentence unless it was "imposed in violation of law," or was "imposed as a result of an incorrect application of the sentencing guidelines," or was "outside the range of the applicable sentencing guideline, and is unreasonable." 18 U.S.C. §§ 3742(d), (e). We accept the district court's findings of fact unless they are clearly erroneous. 18 U.S.C. § 3742(d). The Guidelines require the sentencing court to make factual determinations which depend upon an assessment of the broad context of the crime. *See United States v. Gallegos,* 868 F.2d 711, 713 (5th Cir.1989). A defendant's status as a minimal or minor participant is a factual finding which is protected by the clearly erroneous standard.

The application notes accompanying Guideline section 3B1.2 provide:

1. Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. *Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.*

2. It is intended that the downward adjustment for a minimal participant will be used *infrequently.* It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marijuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.

Guidelines, Application Notes to § 3B1.2 at 3.6 (emphasis added).

Weddle does not qualify as a minimal participant in the offense as the evidence presented fails to conclusively show that she lacked the knowledge or understanding of the scope and structure of the enterprise. Weddle contends that she did not know the scope and structure of her mother's operation or that the drug involved in

the conspiracy was cocaine. At the sentencing hearing, the government provided evidence indicating that on at least three different occasions, Weddle provided information to a third party regarding her mother's drug distribution operation.[20]

The tapes indicate that Weddle was well-acquainted with her mother's operation. She knew to advise others of how much to say over the phone and she knew who in the organization would be able to assist any caller. If her mother was unavailable, Weddle would advise others of Anders' whereabouts; she would pass messages from one conspirator to another. All of her conversations indicate an overall understanding of the conspiracy—unlike the characteristics of a minimal participant. Moreover, even if Weddle did not know the entire scope of the conspiracy, by the very definition of the offense, she was subject to it.[21]

## B. Justifications for the Upward Departure

■ In sentencing Weddle and upwardly departing from the Guidelines, the district court relied on two important factors: first, that the Guidelines did not take into account Weddle's actual prior criminal history; and second, that the transaction which was the subject of the prosecution involved a large quantity of drugs. In addition to the arguments that have already been addressed, namely that she was knowledgeable of the events that were taking place during the conspiracy and that she was not entitled to a reduction for her alleged minimal role in the offense, Weddle contends that the presentence report failed to alert her of the factors that would be relied upon for departure. Given the evidence presented, we find that not only was the district court justified in departing from the Guidelines but also that the departure was reasonable.

In Part F of Weddle's presentence report, as in her mother's, the probation officer identified the factors that may warrant a departure: Weddle's prior felony drug conviction (which was pending for sentencing) and the large quantity of drugs involved in the transaction. Weddle did not dispute the accuracy of these facts or that they would be relied upon for a departure. The district court provided her with suffi-

---

**20.** At the sentencing hearing, the government stated:

I would call the attention of the Court to certain transcripts ... Specifically, I would call the Court's attention to a conversation ... in which Trudie Weddle is talking [to] Gladys Creel on 2–11–88 at 9:17 PM, when Gladys Cree[l] asks Ms. Weddle whether or not there is any cocaine there, after a very extensive conversation regarding all of the various kinds of drugs that both Ms. Creel and Ms. Weddle are into using and transacting, she asks about whether ... you are not into cocaine? No. They both agree they ... don't take cocaine. But in a later conversation with Miss Creel ... on February 19, 1988 at 9:07—she asks Ms. Weddle whether she has any cocaine around here, and Weddle says no. In a following later conversation, Ms. Weddle is talking with Gladys Creel, and in that conversation ... Miss Creel makes clear ... that she's looking for Bonnie Anders, and starts to talk about [ ] what she wants to see Bonnie Anders for, and Ms. Weddle cautions her, shush, don't talk too much on the phone.
Knowing that Miss Creel is involved in transacting cocaine, she's seeking Miss Barton. Trudie Weddle tells her, she [Creel] starts to tell ... what is that business. Ms. Weddle says, shush, don't talk about it on the phone. Clearly, even without more, I would respectfully submit to the Court, there is evidence in the record of Miss Weddle's knowledge that the substance being transacted is cocaine.
Finally, as the Court recalls, there is the occasion, in fact, it's the subject of this particular telephone count in which Bonnie Anders calls Trudie Weddle and says, you know, remember what we did yesterday? And yesterday, the day before, Trudie Weddle and Bonnie Anders had gone down to Willie C. Henry's house. And Trudie says yes. She says, well, tell Lana Dale when she comes in she's got to call me. Directly after that, surveillance shows Lana Dale Barton going to Knoxville to the storage units.
I would respectfully submit to the Court that Trudie Weddle knew precisely what was going on.
Joint Appendix, Volume II at 40–42.

**21.** Section 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
21 U.S.C. § 846.

cient opportunity to rebut the factors in the presentence report warranting an upward departure. Furthermore, Weddle has a long history of criminal drug offenses and a variety of state convictions that the Guidelines did not take into account.

The district court properly departed from the Guidelines in sentencing Weddle. The evidence presented indicates that Weddle was a part of the conspiracy to distribute 981 grams of cocaine, and the telephone count to which she pled was in furtherance of that conspiracy. A departure from the Guidelines was warranted in this instance not only because Weddle has a long history of criminal drug offenses, and was arrested while on bond pending sentence for a felony conviction, but also because of the amount of drugs involved in the conspiracy.

## IV. CONCLUSION

We find that the district court properly sentenced Anders and Weddle. The information in the presentence report provided Anders' counsel with sufficient notice of an upward departure. Given Anders' criminal history and the amount of drugs involved in this transaction, the district court's departure was reasonable and justified. The evidence conclusively revealed that Weddle was an active participant in her mother's conspiracy to distribute cocaine and marijuana. Given Weddle's history of drug offenses, prior felony drug conviction, and numerous state convictions, the district court was justified in departing from the Guidelines.

For the foregoing reasons we AFFIRM the judgments of the Honorable Eugene E. Siler, Chief Judge of the United States District Court, Eastern District of Kentucky, against Anders and Weddle.