928 F.2d 405
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tracy COTTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James BOBO, Defendant-Appellant.
 Nos. 89-6291, 90-5080.
 United States Court of Appeals, Sixth Circuit.
 March 12, 1991.
 
 On Appeal from the United States District Court for the Western District of Tennessee, No. 88-20299; Turner, J.
 W.D.Tenn.
 VACATED IN PART AND AFFIRMED IN PART.
 Before BOYCE F. MARTIN, Jr., RYAN and SUHRHEINRICH, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Tracy Cotton and James Bobo appeal their convictions for aiding and abetting each other in unlawfully, knowingly, and intentionally possessing cocaine with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), and 18 U.S.C. Sec. 2. Although the defendants were prosecuted separately, we discuss their cases together because of the commonality of facts involved in the two appeals.
 
 
 2
 Tracy Cotton entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2), after his motion to suppress the cocaine he was found to be carrying was denied. Because we conclude that the district court erred in denying the suppression motion, we must reverse Cotton's conviction.
 
 
 3
 James Bobo was convicted upon the verdict of a jury and now appeals his conviction and sentence on several grounds. Finding that all of Bobo's arguments are without merit, we affirm the conviction and sentence.
 
 I.
 
 4
 On October 26, 1988, Reginal Drake, a Drug Enforcement Task Force Officer, observed defendant Cotton at the Memphis, Tennessee airport after Cotton deplaned at about 7:15 a.m. from a flight arriving from Los Angeles, a known source city for narcotics. Cotton was carrying a very small shoulder bag and left the airport without picking up any additional luggage. While observing Cotton walking from the terminal building to a taxi stand, Drake noticed that a woman was walking behind Cotton, but not with him. When Cotton and the woman reached the taxi stand, they shared a cab to a hotel near the airport. When registering at the hotel desk, Cotton used what proved to be his Los Angeles home address and he paid cash for one night's lodging.
 
 
 5
 In addition to what he observed at the airport, Officer Drake learned from airline personnel that Cotton had made airline reservations in Los Angeles just prior to flight time and purchased a one-way ticket with cash. Drake alerted the Organized Crime Unit of the Memphis Police Department who set up surveillance in the hotel room across from Cotton's room. The surveillance officers testified that Cotton remained in his room all day, a sixteen-hour period.
 
 
 6
 At approximately 6:00 p.m. that evening, Bobo was contacted by a man named Donnell, who turned out to be Cotton's California drug supplier. Donnell had been looking for Bobo's brother to act as Cotton's chauffeur during Cotton's Memphis visit but after learning that the brother was deceased, Donnell asked Bobo to pick up Cotton at the hotel. Bobo agreed to do so.
 
 
 7
 At 11:00 p.m., the surveillance officers observed Bobo entering Cotton's room. Bobo stayed only two or three minutes. He then emerged from the room, looked both ways as he stepped into the hallway, and motioned for Cotton to follow. While Bobo and Cotton were in the hallway, the surveillance officers stopped them, identified themselves, and asked to speak to both men. Officer Bibbs patted Cotton down and discovered a package of cocaine. Cotton and Bobo were both arrested and informed of their rights. The officers obtained Cotton's permission to search the hotel room where they found a second package of cocaine.
 
 
 8
 Following entry and acceptance of his conditional guilty plea, Cotton was sentenced to thirty months imprisonment to be followed by four years of supervised release.
 
 
 9
 Before being sentenced, Cotton testified for the prosecution at Bobo's trial. Cotton testified that Donnell sent him to Memphis from Los Angeles and told him to wait for a call from Bobo. Bobo later contacted Cotton and told him he was on his way to the hotel. Cotton testified that when Bobo arrived at his room, Cotton showed him a large package containing cocaine for which Cotton was to receive $21,000. There was also a small package for which Cotton was to be paid $10,000, but Donnell instructed Cotton to deliver only one package at a time. Cotton testified that Bobo told them they had to drive to another location to get the money. Bobo did not have the money with him or in his car at the time of his arrest.
 
 
 10
 The jury in Bobo's trial was unable to reach a verdict. In preparing for a second trial, the prosecution expressed concern that their chemist and their FBI witness, who were needed to establish that the substance found was cocaine, might be unavailable to testify on short notice. To avoid this problem, Bobo offered to stipulate that the substance found was cocaine, in exchange for a concession on the sentencing guidelines. The prosecution refused the proposed stipulation. Bobo was convicted at a second trial and sentenced to seventy-three months imprisonment, forty-eight months of supervised release, and a mandatory special assessment of $50.
 
 II. Cotton's Appeal
 
 11
 A. Standard of Review.
 
 
 12
 When reviewing the denial of a motion to suppress evidence, the appellate court must consider the evidence in the light most favorable to the government. United States v. Oates, 560 F.2d 45, 49 (2d Cir.1977). The district court's findings of fact may be reversed only for clear error. United States v. Coleman, 628 F.2d 961 (6th Cir.1980).
 
 
 13
 B. Reasonableness of the Stop.
 
 
 14
 To lawfully stop a suspect, the police "must be able to point to specific and articulable facts" justifying their reasonable suspicion that the suspect has been or is about to be involved in a criminal activity. Terry v. Ohio, 392 U.S. 1, 21 (1968); United States v. Sokolow, 490 U.S. 1 (1989). The officer may base this suspicion on the totality of the circumstances. Terry, 392 U.S. at 22; Sokolow, 490 U.S. at 8. The suspect's conformance to a drug courier profile does not, by itself, constitute reasonable suspicion. Reid v. Georgia, 448 U.S. 438 (1980) (per curiam). However, an officer's reasonable suspicion may be based on factors included in a drug courier profile. Sokolow, 490 U.S. at 10.
 
 
 15
 At the airport, Officer Drake suspected that Cotton might be involved in drug activity because Cotton flew in from a source city, arrived early in the morning when police activity is diminished, carried only a small bag, and appeared to be concealing the fact that he and his companion were traveling together. These circumstances, the first three of which are the familiar components of a drug courier profile, do not alone constitute the reasonable suspicion necessary for a Terry stop. The Supreme Court in Reid also held that the additional fact that a suspect attempted to distance himself from his companion, although not part of the drug courier profile, also fails to establish the necessary reasonable suspicion. Id. As reasonable suspicion to justify stopping Cotton at the airport did not exist, we turn our attention to the events at the hotel to determine whether what occurred there provides grounds for the ultimate Terry stop.
 
 
 16
 At the hotel, Officer Drake learned that Cotton had reserved a hotel room for only one night and had paid for the room with cash. During the police surveillance, the officers noted that Cotton did not leave his room for sixteen hours, had a visitor for only a few minutes at 11:00 p.m., and that the visitor checked the hall before motioning for Cotton to follow. We do not believe these events at the hotel, sixteen hours after the initial observation at the airport, alone or in combination, provided the officers with the necessary reasonable suspicion to justify stopping Cotton.
 
 
 17
 The relative brevity of the hotel stay when coupled with the other factors also fails to provide a sufficient basis for reasonable suspicion. In Reid, the court did not find it significant that the defendant only planned a one-day stay. Reid, 448 U.S. 438. Other courts, including this circuit, have also discounted this factor as it is entirely consistent with business travel. See United States v. Saperstein, 723 F.2d 1221, 1228 (6th Cir.1983); United States v. White, 890 F.2d 1413, 1417 (8th Cir.1989), cert. denied, 111 S.Ct. 77 (1990).
 
 
 18
 Courts have also refused to attach significance to the use of cash for travel plans. In White, a case whose facts resemble Reid except for the defendant's use of cash, the court commented that "[a] ticket purchased with cash may mean nothing more than that the holder did not have the use of a credit card...." White, 890 F.2d at 1419. The use of cash is even less significant where the defendant does not attempt to conceal his identity: "the purported benefit of such transactions to drug couriers is anonymity. However, ... the [suspect] in this case not only furnished his own name to the airline ticket agent, but left a valid call-back number as well." Saperstein, 723 F.2d at 1228-29. Since Cotton gave both the hotel clerk and the airline his name and Los Angeles address, the fact that he paid with cash is irrelevant.
 
 
 19
 Bobo's short visit and furtive glance up and down the hallway, and Cotton's lengthy stay in his room, also fail to show specific, articulable reasons for the stop. Such behavior is not indicative of drug trafficking. Because such circumstances "describe a very large category of presumably innocent travelers who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure," we refuse to hold that remaining in a hotel room for sixteen hours, having visitors who do not stay long and who check the hall before leaving, even when combined with the "drug profile" components rejected as grounds for a Terry stop in Reid, supra, provide the "specific and articulable facts" that justify a warrantless seizure of the Terry variety. See Reid, 448 U.S. at 441. Our decision in this case is bolstered by the testimony of the arresting officer, Melvin Bibbs, which indicates that, in fact, the officers entertained no reasonable suspicion that drug trafficking was afoot. As Officer Bibbs testified:
 
 
 20
 Well initially, we stopped them to talk to them because we didn't have anything to arrest them for or anything. Basically, I was kind of bored with the whole situation over there because they hadn't come out of the room and we were there all day long, and I didn't think there was anything to it....
 
 
 21
 That rationale for stopping Cotton falls far short of providing "the specific and articulable facts" that a crime is afoot, which Terry, supra, requires. Thus, we conclude that the officers were not justified in stopping defendant Cotton.
 
 
 22
 C. Reasonableness of the Frisk.
 
 
 23
 We also conclude that even had the officers based their stop on reasonable suspicion, they nevertheless lacked the necessary individualized suspicion to conduct a frisk. In order to frisk Cotton, Officer Bibbs must have been "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others...." Terry, 392 U.S. at 24. The district court found, and the government here argues, that the police could have justifiably believed that Cotton was armed because he was a suspected drug courier. We do not agree.
 
 
 24
 Although the Second Circuit has held that an officer may base his belief that a suspect is armed and dangerous on the assumption that suspected drug traffickers frequently carry guns, we do not believe, nor has any court held, that this factor alone justifies a search. See United States v. Oates, 560 F.2d 45, 62 (2d Cir.1977). The district court here acknowledged that the only justification for the frisk was that Cotton was suspected of drug trafficking. United States v. Cotton, No. 88-20249-TU, slip op. at 5 (W.D.Tenn. Mar. 14, 1989). In contrast, the officers in Oates also noticed suspicious bulges in one of the suspect's clothing and knew of Oates' reputation as a "major narcotics dealer." Oates, 560 F.2d at 59. A known reputation as "one of the top narcotics violators in a major metropolitan area" also justified the officer's decision to frisk a suspected drug dealer in United States v. Santana, 485 F.2d 365, 368 (2d Cir.1973), cert. denied, 415 U.S. 931 (1974). Prior knowledge that this suspect may be dangerous is important because the Supreme Court requires suspicion be "directed at the person to be frisked." Ybarra v. Illinois, 444 U.S. 85, 94 (1979). In this case, no such directed suspicion existed. Cotton did not have a reputation as a known drug dealer. Nor did his behavior give any hint of threatened harm to the officers. Under Ybarra, without particular suspicion that this drug trafficker was armed and violent, the police were not justified in frisking.
 
 III. Bobo's Appeal
 
 25
 On appeal, Bobo challenges his conviction, based on the denial of his motion for acquittal and the court's refusal to give a lesser included offense instruction. He also challenges the court's failure to reduce his sentence based upon his insignificant role in the offense and his offer to stipulate that the officers found cocaine.
 
 
 26
 A. Bobo's Motion for Acquittal.
 
 
 27
 An appellate court reviewing a motion to acquit must view the evidence in the light most favorable to the government. The court may not consider the credibility of witnesses nor the weight of the evidence. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982).
 
 
 28
 Bobo argues that the evidence at trial was not sufficient to convict him of possession with intent to distribute. He correctly notes several problems with the government's case. His lack of money and his last minute, almost accidental, involvement indicate that he did not intend to purchase or distribute the drugs. He claims that his only role was as a last minute substitute chauffeur. Viewing the evidence as we must, however, in the light most favorable to the government, the jury could have found beyond a reasonable doubt that Bobo was guilty of the crime charged because he agreed to transport Cotton to get the money and knew that he was involved in the sale of cocaine.
 
 
 29
 B. Lesser Included Offense Instruction.
 
 
 30
 Bobo requested, and the court declined to give, an instruction for simple possession, 21 U.S.C. Sec. 844, a lesser included offense of possession with intent to distribute. See United States v. Garcia-Duarte, 718 F.2d 42, 47 (2d Cir.1983); United States v. Burns, 624 F.2d 95, 104 (10th Cir.), cert. denied sub nom. Reynolds v. United States, 449 U.S. 954 (1980).
 
 
 31
 Federal Rule of Criminal Procedure 31(c) provides that the defendant "may be found guilty of an offense necessarily included in the offense charged...." A defendant is entitled to such an instruction when the elements of the lesser offense comprise a subset of the elements of the charged offense. Such an instruction may not be given where the lesser offense requires an element not required by the greater offense. Schmuck v. United States, 109 S.Ct. 1443 (1989). Likewise, a court may not give such an instruction unless the evidence would permit a rational jury to find the defendant guilty of the lesser offense and acquit him of the greater. Id. at 1450 n. 8 (citing Keeble v. United States, 412 U.S. 205, 208 (1973)).
 
 
 32
 Bobo was not entitled to an instruction on simple possession, however, because a lesser included offense instruction requires more than an offense comprising a subset of the greater offense; it also requires a finding that the jury could rationally find the defendant guilty of the lesser offense while acquitting him of the greater offense. United States v. Schmuck, 109 S.Ct. at 1450 n. 8. The transaction in this case involved the purchase of 1.5 kilograms of cocaine for a price of $31,000. Possession of a quantity of drugs of that amount is strong circumstantial evidence of an intent to distribute. United States v. Vergara, 687 F.2d 57, 62 (5th Cir.1982). We think a jury could not rationally find that Bobo possessed such a large quantity of cocaine for personal use or for any purpose other than an intent to distribute.
 
 
 33
 C. Failure to Reduce Sentence Due to Bobo's Minimal or Minor
 
 
 34
 Role in Crime.
 
 
 35
 Bobo contends that the district court erred in refusing to downgrade his sentence for his minimal or minor role in the conspiracy to distribute cocaine, pursuant to section 3B1.2 of the Sentencing Guidelines. U.S.S.G. Sec. 3B1.2. Bobo had the burden of proving such mitigating factors by a preponderance of the evidence. United States v. Perry, 908 F.2d 56, 58 (6th Cir.), cert. denied, No. 90-6014 (U.S. Dec. 3, 1990). Because a defendant's status as a minimal or minor participant involves a factual finding, an appellate court may reverse only for clear error. United States v. Anders, 899 F.2d 570, 580 (6th Cir.), cert. denied sub nom., Weddle v. United States, No. 90-6016 (U.S. Nov. 26, 1990).
 
 
 36
 The Sentencing Guidelines provide a four level decrease for minimal participants and a two level reduction for minor participants. Cases falling in the middle receive a three level reduction. U.S.S.G. Sec. 3B1.2. The determination of which reduction to apply is "heavily dependent upon the facts of the particular case." Background, U.S.S.G. Sec. 3B1.2. The Application Notes describe a minimal role as "plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the enterprise and of activities of others is indicative of a role as minimal participant." Application Notes, U.S.S.G. Sec. 3B1.2. The Commission noted that such a reduction should be used "infrequently." Id. A minor participant "means any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id.
 
 
 37
 The district court did not clearly err in sentencing Bobo. The Sentencing Guidelines stress the defendant's knowledge of his involvement in a criminal activity. The defendant need not understand the full extent of the conspiracy's operation. See Anders, 899 F.2d 570. Evidence in the case, which at sentencing must be viewed in the light most favorable to the government, indicates that Bobo understood the crime involved. The district court found "some definite proof that he was to transport the money." Sentencing Hearing at 38, United States v. Bobo, No. 88-2029-S (W.D.Tenn. Nov. 11, 1989). Cotton also testified that he showed Bobo the large package of cocaine, so Bobo knew the purchase involved a substantial amount. Because Bobo understood the nature of the conspiracy, the district court did not err in refusing to reduce his sentence for minimal involvement.
 
 
 38
 D. Failure to Reduce Sentence for Factors Not Considered by
 
 
 39
 the Sentencing Commission.
 
 
 40
 Bobo argues that the district court erred by refusing to reduce his sentence for offering to stipulate that the substance found was cocaine. The court below and the parties agree that the notion that a defendant might accept responsibility for the criminal conduct involved while insisting upon a jury trial was not considered by the Sentencing Commission. Because a defendant may not appeal a sentence based on factors not considered by the Sentencing Commission which he believes warrant a reduction in his sentence, United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989), we need not reach this issue.
 
 IV.
 
 41
 For the foregoing reasons, we VACATE Cotton's conviction, and AFFIRM Bobo's conviction and sentence.[1]
 
 
 
 [1]
 Bobo does not raise, understandably, and we do not address, the significance to Bobo of our decision to vacate Cotton's conviction on fourth amendment grounds. We note, however, that it appears to be well settled that fourth amendment rights are personal rights which may not be asserted vicariously. Alderman v. United States, 394 U.S. 165, 174 (1969)